Nos. 14-4310 (L) & 14-4317

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

FIDEL RODRIGUEZ and YIDA PEREZ,
*Defendants/Appellants*.

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. Robert E. Payne)

CORRECTED OPENING BRIEF OF THE APPELLANTS

MICHAEL S. NACHMANOFF
Federal Public Defender

Samuel P. Simpson, V                   Paul G. Gill*
Samuel P. Simpson, V, PLLC             Assistant Federal Public Defender
Counsel for Appellant Rodriguez        Counsel for Appellant Perez
4825 Radford Avenue, Suite 103         701 East Broad Street, Suite 3600
Richmond, VA 23230                     Richmond, VA 23219
(804) 288-0337                         (804) 343-0800
spsquinto@gmail.com                    paul_gill@fd.org

                                       * Lead Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................... iii

STATEMENT OF JURISDICTION..................................... 1

STATEMENT OF THE ISSUES. ..................................... 2

STATEMENT OF THE CASE........................................ 2
    Procedural History............................................ 2
    Trial Proceedings. ........................................... 3
    Sentencing Facts ............................................ 13

STANDARDS OF REVIEW......................................... 24

ARGUMENT.................................................... 25

I.    The record lacks evidence that the visual depiction charged in Count Four was produced using materials transported in or affecting interstate and foreign commerce, as alleged by the United States and required by 18 U.S.C. § 2251(a). ...................................................... 25

II.    A video of a clothed minor licking or fondling his mother's breasts and grabbing his father's underwear-clad bottom while the father rocks atop the underwear-clad mother does not satisfy the definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2)(A)........................... 26

        There was no "actual sexual intercourse" depicted in the Count Four video, by anybody....................................... 27

        There was no "simulated sexual intercourse," because a reasonable viewer would not believe that the clearly underwear-clad actors actually engaged in intercourse...................................... 28

        To the extent Fidel Rodriguez exhibited his genitals briefly, that was not lascivious, nor was there evidence that the minor assisted him in doing so. ................................................ 29

i

III.  18 U.S.C. § 2251(a) requires active use, enticement, persuasion, or coercion of a minor, and not merely the passive acceptance of that minor's voluntary engagement in such conduct, without instigating it.. . . . . . . . . . . . . . . . . 29

    The proper construction of the "use" prong of section 2251(a) requires the affirmative act of instigation, which was lacking here.. . . . . . . . 33

IV.  With regard to Count One, the Government failed to prove beyond a reasonable doubt that Fidel Rodriguez had any involvement with or was ever aware of the taking of Photo 340.jpg, the subject of that Count.. . . . . . . . . 34

V.  It constitutes cruel and unusual punishment under the Eighth Amendment to imprison these defendants for 15 years under the unique circumstances of this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

REQUEST FOR ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Allergan, Inc. v. Alcon Laboratories, Inc.*, 324 F.3d 1322 (Fed. Cir. 2003). . . . . . . 32

*Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386 (1984). . . . . . . . . . 32

*Clark v. Absolute Collection Serv.*, 741 F.3d 487 (4th Cir. 2014). . . . . . . . . . . . . . . 32

*Falgout v. United States*, 2013 U.S. Dist. LEXIS 97491
(N.D. Ala. July 12, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*In re Search of 10 Cyr Circle*, 916 F. Supp. 2d 195 (D. Mass. 2013). . . . . . . . . . . . 29

*Neston v. United States*, 2010 U.S. Dist. LEXIS 138907 (M.D. Fla. Dec. 29, 2010)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993). . . . . . . . . . . . . . . . . . . . . 24

*Robinson v. California*, 370 U.S. 660 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Rummel v. Estelle*, 445 U.S. 263 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Santoro v. Accenture Fed Servs., LLC*, 748 F.3d 217 (4th Cir. 2014). . . . . . . . . . . . 27

*Solem v. Helm*, 463 U.S. 277 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*United States v. Black*, 239 Fed. Appx. 210 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . 43

*United States v. Broxmeyer*, 616 F.3d 120 (2nd Cir. 2010). . . . . . . . . . . . . . . . . . . . 32

*United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996) (en banc). . . . . . . . . . . . . . . . 24

*United States v. Day*, 700 F.3d 713 (4th Cir. 2012),
*cert. denied*, 133 S. Ct. 2038 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Engle*, 676 F.3d 405 (4th Cir.),
*cert. denied*, 133 S. Ct. 179 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Fadl*, 498 F.3d 862 (8th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Falgout*, 325 Fed. Appx. 775 (11th Cir. 2009) . . . . . . . . . . . . . . 42

*United States v. Helton*, 2007 U.S. Dist. LEXIS 41602 14 (W.D. Okla. 2007). . . 31

*United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006). . . . . . . . . . . . . . . . . . 43

*United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . 25

*United States v. McCloud*, 590 F.3d 560 (8th Cir. 2009),
*cert. denied*, 131 S. Ct. 72 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Moreland*, 665 F.3d 137 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . 24

*United States v. Nelson*, 304 Fed. Appx. 821 (11th Cir. 2008) . . . . . . . . . . . . . . 42

*United States v. Ortiz-Graulau*, 526 F.3d 16 (1st Cir.),
*cert. denied*, 555 U.S. 1077 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 44

*United States v. Polk*, 905 F.2d 54 (4th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . 38, 43

*United States v. Polk*, 546 F.3d 74 (1st Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States v. Rhodes*, 779 F.2d 1019 (4th Cir. 1985). . . . . . . . . . . . . . . . . 38, 43

*United States v. Ritter*, 2012 U.S. Dist. LEXIS 74401 (D. Mass. 2012) . . . . . . . . 31

*United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 29, 30

*United States v. Smith*, 451 F.3d 209 (4th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Wellman*, 716 F. Supp. 2d 447 (S.D. W. Va. 2010). . . . . 39, 40, 42

*United States v. Whitehead*, 849 F.2d 849 (4th Cir. 1988). . . . . . . . . . . . . . . . . . 38

*United States v. Williams*, 553 U.S. 285 (2008). . . . . . . . . . . . . . . . . . . . . . . . 22, 28

*United States v. Zayyad*, 741 F.3d 452 (4th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . 24

## Constitution, Statutes & Rules

U.S. Const. Amend VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2251(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 29, 31, 33

18 U.S.C. § 2251(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2256. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21, 26

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rule of Criminal Procedure 29.. . . . . . . . . . . . . . . . . . . . . . . . 11, 24

Kan. Stat. Ann. § 21-5510. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Kan. Stat. Ann. §§ 21-6627. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Mont. Code Ann. § 46-18-222. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Mont. Code Ann. §§ 45-5-625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## Other Authorities

73 Fed. Reg. 77432 (Dec. 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 28

USSC, *2012 Sourcebook of Federal Sentencing Statistics* . . . . . . . . . . . . . . . . . 41

USSC, *Statistical Information Packet, FY 2012, Fourth Circuit*. . . . . . . . . . . . 40

Nos. 14-4310 (L) & 14-4317

———————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

FIDEL RODRIGUEZ & YIDA PEREZ,
*Defendants/Appellants*.

———————

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. Robert E. Payne)

———————

BRIEF OF THE APPELLANTS

———————

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to

18 U.S.C. § 3231.  That court entered judgments as to each defendant on April 10,

2014.  J.A. 438-49.   Fidel Rodriguez timely filed his notice of appeal on April 16,

2014, as did Yida Perez on April 17, 2014.  J.A. 450-52; *see* Fed. R. App. P. 4(b)(1),

(b)(6).  Therefore, this Court has jurisdiction over this appeal pursuant to 28 U.S.C.

§ 1291.

1

## STATEMENT OF THE ISSUES

I.    Whether the record establishes that the visual depiction charged in Count Four was produced using materials transported in or affecting interstate and foreign commerce, as alleged and as required by 18 U.S.C. § 2251(a).

II.   Whether a minor's licking or fondling his mother's breasts and grabbing his father's underwear-clad bottom while the father rocks atop the underwear-clad mother constitutes "sexually explicit conduct" engaged in or assisted by the minor under 18 U.S.C. § 2256(2)(A).

III.  Whether allowing one's minor son to be depicted in child pornography, which violates 18 U.S.C. § 2251(b), also constitutes a violation of the different crime defined in § 2251(a), limited to the action verbs of using, persuading, inducing, enticing, or coercing a minor to engage in or assist another to engage in "sexually explicit conduct" for purposes of producing a visual image of same.

IV.   Whether, regarding Count One, the Government adduced sufficient evidence to prove that Fidel Rodriguez had any involvement with or awareness of the taking of Photo 340.jpg, the subject of that Count?

V.    Whether it constitutes cruel and unusual punishment under the Eighth Amendment to imprison for 15 years defendants with no prior record, for their actions or lack thereof with respect to their adult and minor son creating family images they treated as folly, which were never printed or shared outside the home.

## STATEMENT OF THE CASE

### *Procedural History*

This appeal stems from the conviction of defendants after a bench trial on four counts of using their minor son to engage in, or assist any other person to engage in, sexually explicit conduct for the purpose of producing a visual

2

depiction of such conduct, or aiding and abetting the same, in violation of 18 U.S.C. §§ 2251(a) and 2.

The district court considered and rejected arguments that the 15-year mandatory minimum required by 18 U.S.C. § 2251(e) violated the Eighth Amendment prohibition against cruel and unusual punishment.  However, it viewed statutory sentencing factors as fully met by a 15-year prison term for each defendant, rejecting the prosecution's  arguments for the high end of the 235 to 293 month prison term called for by the advisory Guideline range.  It entered judgments accordingly, from which the defendants timely appealed.

### *Trial Proceedings*

Defendants Fidel Rodriguez and Yida Perez were indicted on four counts of violating 18 U.S.C. § 2251(a).[1]  J.A. 12-17.  They waived trial by jury, and the charges were tried to the bench on November 14, 2013.  J.A. 6-8 (Docket Entries Nos. 25, 31, and 38).

The married defendants lived in the Nottingham Green Apartments complex

---

[1]  In relevant part and as charged, 18 U.S.C. § 2251(a) reads as follows:
Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

3

in Richmond, Virginia, from approximately July 2007 to April 2012.  J.A. 51-54&

Govt. Trial Exh. 1.  On April 24, 2013, a search warrant was executed at the

Richmond home they later occupied.  The warrant originated from investigation of

co-defendant Yosvany Rodriguez for "conventional" child pornography available

on the internet or on peer-to-peer networks, with which the FBI is frequently

involved.  J.A. 57-60, 100-01; *see also* J.A. 14-15 (Counts Five through Seven,

charging only Yosvany Rodriguez with distribution of child pornography videos

on three dates in December 2012).  Images consistent with that investigation were

found on computers in the house.  So were non-pornographic photos and videos of

friends and family members.  J.A. 101-02.

   When the search warrant was executed, the home's occupants included

Fidel Rodriguez, Yida Perez, their minor son,[2] and Yosvany Rodriguez, the adult

son of Mr. Rodriguez from a previous relationship, and a woman named Raquel

Rodriguez.  *See* J.A. 61-63, 67, 112-13.  Raquel Rodriguez was visiting from Cuba

at the time.  The agent who identified her presence in the house did not know how

long she had been there, or how frequently she visits.  J.A. 67.

---

   [2]  The minor son, 17 years old at the time of trial, has the same initials as the co-defendant Yosvany Rodriguez, his 31-year old half brother who committed suicide just before trial.  *See* J.A. 63-64, 204, 490.  Unless otherwise indicated, references herein to "the minor" are to the minor son of defendant Rodriguez, and stepson of defendant Perez.

Computers were seized from the bedroom occupied by Yosvany Rodriguez and the minor, but not the master bedroom the defendants occupied. The only items seized from there were some DVDs or videotapes, not any computers or camera of any type. J.A. 65, 107-08, 214A.

A Canon PowerShot camera found in the home was made outside Virginia, and released to the public in March 2008. J.A. 57-60.

An IT specialist and senior forensic examiner with the FBI, Mrs. Karen Shafer, participated in the execution of the search warrant. J.A. 73-75. She met the defendants and the minor at the home. J.A. 75-76. She personally seized a red HP Pavilion laptop computer from the kitchen, and a black Dell laptop in a bedroom. J.A. 70-71, 76. She later examined and copied the contents of nine DVDs and the Canon PowerShot camera, and processed computers copied by another technician. J.A. 78.

Mrs. Shafer identified one exhibit as containing the printout of an image file named 340.jpg, recovered from a hard drive and two DVDs found in the defendants' home. She described the images as taken by the Canon PowerShot camera and associated with the date December 2, 2008, at 8:41:08, military time (i.e., eight seconds after 8:41 a.m.). J.A. 79-80 & Govt. Trial Exh. 3.

The image file named 340.jpg is the only one identified in Count One of the indictment. *See* J.A. 12. Mrs. Shafer recognized the image as depicting Yosvany

5

Rodriguez, Yida Perez, and the minor. She described the image as showing Ms. Perez lying on the floor, being held down by Yosvany. Her shirt is lifted up enough to expose her left breast. The minor is kneeling down above her with his flaccid penis slightly in her mouth, while Yosvany looks at the camera. J.A. 80-81 & Govt. Trial Exh. 3. Ms. Perez's eyes appear to be closed.

Another exhibit contained a composite of four images, including 340.jpg as the third image depicted. Of the other three images, the first was taken at 7:32:21 hours on December 2, 2008, and showed the minor lying on the floor in front of a couch, clothed, but with his hands in his genital region. The second was very similar to the 340.jpg image, but labeled 339.jpg, with a time of 08:40:56. The fourth image was likewise similar to 339.jpg and 340.jpg, but reflected a time of 08:41:18. J.A. 81-82 & Govt. Trial Exh. 4.

Mrs. Shafer accurately described each of the last three images on the four-image composite as depicting Ms. Perez lying on the floor, with Yosvany holding her down and/or holding her arm. J.A. 81-82.

Another trial exhibit contained an image file known as 583.jpg, the lone image mentioned in Count Two of the indictment. It was taken by the Canon PowerShot camera at 5:30:12 on January 10, 2009. It depicts Ms. Perez fully clothed, sitting on a couch. She holds a small coffee cup in one hand, and looks with a bemused expression on her face toward the minor, who sits next to her

6

naked, slouched down with hands at his side, his penis erect.  J.A. 13, 83, & Govt. Trial Exh. 5.

A companion, composite exhibit showed 583.jpg and seven other images found "in the same location" as 583.jpg.  Ms. Perez appears only in the duplicate of 583.jpg.  The other images in the composite were also dated  January 10, 2009, and included the following:

* 579.jpg, taken at 05:26:39, depicting the naked minor, standing beside a couch, on which Fidel Rodriguez is stretched out;

* 580.jpg, taken at 05:27:24, depicting a standing, fully dressed Yosvany Rodriguez;

* 581.jpg, taken at 05:27:55, depicting a close-up of Fidel Rodriguez's head, with Yosvany leaning down such that his head is next to his father's;

* 582.jpg, taken at 05:29:03, depicting the same thing but with Yosvany's head in a slightly different position;

* 584.jpg, taken at 05:30:47, which appears to be a close-up of the minors erect penis;

* 585.jpg, taken at 05:31:51, also showing the minor with an erect penis, but zoomed out enough to show most of his body; and

* 586.jpg, taken at 22:39:08, a close up of the faces of the defendants, whom Mrs. Shafer describes as "french kissing."

J.A. 84-85 & Govt. Trial Exh. 6.

Another exhibit contained a printout of an image file named 78 003.jpg, the lone image identified in Count Three of the indictment.  Recovered from two

DVDs, it was taken on December 23, 2008, at 22:15:39 by the Canon Powershot camera. It depicted Yida Perez in bed with the blanket pulled up over her, covering her entirely but for the top half of her face. Next to her on the bed appears Fidel Rodriguez, naked, and on the other side of him is the minor with T-shirt on, but genital area exposed. The minor is holding his (flaccid) penis with his left hand, while he hovers his right about his father's penis. J.A. 13, 85-87, & Govt. Trial Exh. 7.

Government Trial Exh. 8 was admitted over relevancy objections by both defendants. It was a composite of two images which Mrs. Shafer identified as Yos 002.jpg and Yos 003.jpg, taken at the times of 10:54:56 and 10:55:07, respectively, on January 16, 2009. The first showed the defendants in bed, covers up to their chins. The second included Yosvany, squeezed in next to his father on the opposite side of his mother, and showing only Yosvany's head and part of his clothed upper body. J.A. 86-89 & Govt. Trial Exh. 8.

Government Trial Exh. 10 was a two minute, 24 second video, the only item mentioned in Count Four. Exhibit 9 was a sampling of 21 thumbnail images of still frames from the video, compiled by Mrs. Shafer. Mrs. Shafer testified that she watched the entire video, and it depicted in relevant part three things. First, the minor child is clothed and lying in bed with Ms. Perez, who wears underwear and a shirt. Second, the minor can be seen at various times fondling and licking

8

his mother's breasts, while her shirt is partially pulled up.  Third, Fidel Rodriguez is in bed and has underwear on.  At one point, he briefly exposes his genitals (which he appears to effect on his own), before pulling his underwear over them again and lying on top of Yida Perez, thrusting his hips back and forth.  At that point, the minor child can be seen grabbing Mr. Rodriguez's bottom while he is doing this; again, it is apparent that both defendants are wearing underpants.  J.A. 89-91.

Mrs. Shafer described recovering 51 other still images and two total videos involving the minor child where he was naked, but she did not describe these as pornographic *per se*.  The items recovered included some in which only the minor was depicted, and some in which one or the other defendant was also present. Nobody besides the four family members appeared in these recovered images or videos.  J.A. 92.

Mrs. Shafer agreed that no computers were seized from the master bedroom, and did not know if any of the media on which she found relevant images were in the defendants' bedroom.  J.A. 93.

Internet accounts at the home referred only to Yosvany's name: a "yosvycuba08" Yahoo account, and a "yosvycuba" Hotmail account, with none in

the name of Yida Perez. J.A. 93-94.[3]

Forensic examination could not identify who actually took the photographs admitted or otherwise discussed. None of the ostensibly offending images were found already printed, when the search warrant was executed. Nor was there evidence that the family images were emailed to others or made available to others on file sharing software from the Rodriguez household. J.A. 96-97.

Mrs. Shafer agreed that she reviewed images of Yosvany Rodriguez in which he was the only person depicted. These included many focused on Yosvany's penis, and some appearing to show his penis in the act of climax. Those pictures were nothing like the charged images, or those of other family members. None of the charged photos or others of the minor showed other family members masturbating or climaxing, for example. J.A. 100, 102.

Mrs. Shafer could not tell who, if anybody, viewed the videos or photographs introduced into evidence as Government exhibits, or who was in the house when they were taken, besides the persons depicted therein. J.A. 102-03.

An FBI agent from Puerto Rico whose native language is Spanish interviewed Yida Perez in that tongue on September 18, 2013. Shown the image

---

[3] Although not introduced at trial, the FBI investigation which led to the search warrant had already confirmed that Yosvany was the subscriber to the IP address using file sharing software, from which the FBI downloaded a video depicting anal penetration of a prepubescent female by an adult male. J.A. 243-45.

10

that was the subject of Count One, Ms. Perez said it was taken in the Nottingham Green Apartments, and that the minor was about 12 years old at the time. She described the image as showing "they were just playing around." J.A. 113. Ms. Perez went on to affirm that all other images introduced as trial exhibits were also aken at Nottingham Green, when the minor was between 12 and 14 years old. J.A. 113-14.

Ms. Perez further indicated that nobody outside the Rodriguez family saw the images, or was "involved" in them, and that such pictures were "just something that they did," since the minor was about 10 or 11 years old, and Yosvany approximately 23. J.A. 115.

Ms. Perez did not say that she took photographs the agent displayed to her, or that she instructed her minor son to be involved in them, or that she instructed others to get him involved in the situations depicted. J.A. 117-18.

Defendants moved for judgments of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. During arguments, the district court viewed the video contained in Govt. Trial Exh. 10. The court denied the motions as to all counts. J.A. 118-46.

At that point Ms. Perez called FBI Agent Linsey Bosnich to testify to statements she obtained from Yosvany Rodriguez on the date the search warrant was executed. J.A. 146.

11

In speaking with the agent about images introduced at trial and similar ones, Yosvany never said that his stepmother (Yida Perez) told them to make any of the images. He acknowledged he held down his mother's arm in the photo that was the subject of Count One. He also said he was the primary user of the red computer found in the kitchen. J.A. 147.

Yosvany Rodriguez went on to advise that he had met his girlfriend online, used Skype to communicate with her, and downloaded music, videos, and other materials from the internet using various sources. The materials he admitted downloading included adult pornography. He claimed also to have viewed, but later erased, child pornography, and admitted to having naked pictures of himself on his laptop. J.A. 147-48.[4]

Discussing specifically the image charged in Count One, Yosvany laughed and smiled when the agent showed him that image. He said they were "only playing," and "this is what families do." J.A. 149.

---

[4] The images charged in Counts One through Four stand in stark contrast to the internet transfer of child pornography which prompted the search warrant. *See supra* note 3. Count One represents the only "intrafamily" images showing any contact between penis and mouth; nothing else reflects penetration. In addition, the other intrafamily images depict its subjects laughing or smiling; there is none of the pain or crying so commonly depicted in internet traded child pornography. *See infra* § 5 (Eighth Amendment discussion of child pornography cases).

### *Sentencing Facts*

Neither defendant had any criminal history points.  Each nevertheless had an advisory Sentencing Guideline range of 235 to 293 months imprisonment.  J.A. 456, 471, 487, 497-98.

Raquel Rodriguez, the sister of Fidel Rodriguez, was interviewed in Spanish by an FBI agent after she was found at the defendants' home while the search warrant was executed.  J.A. 315.  She said that while staying with the family here for months, she never saw nude photos of the family, never saw them taking nude photos of each other, and never saw any conduct like that depicted in the photographs admitted at trial.  J.A. 317, 325.

Although denying that it is a Cuban custom to take photographs like those admitted at trial, Raquel Rodriguez acknowledged that in Cuba, "some boys take nude photographs joking around or as silliness," and that here in the United States, "Yosvany Rodriguez may take photographs of his father in the shower."  J.A. 317, 329-30.  She described it as "entertainment on the weekends.  The Rodriguez family do not go to clubs or anything like that."   Racquel also recalled at least one photograph Yosvany  took of his father in the shower in Cuba about 10 years ago, and did not describe this as unusual conduct.  J.A. 330.

Yosvany Rodriguez admitted to using the program used to download child pornography from the internet, and said he was the only one using that program.

13

J.A. 326. He noted that his family was from Cuba, and that his parents had no

problem returning to that country, as they had as little as two years ago. J.A. 320,

328. They nevertheless did not return to Cuba after the search warrant was

executed in April 2013, and remained living together when arrested on the federal

indictment in September 2013. J.A. 328.

Yosvany Rodriguez killed himself on November 14, 2013. J.A. 490. He

was to plead guilty under a plea agreement the next day. *See* J.A. 7 (minute

entries for 11/14/2013). He left a suicide note. It indicated in part the following:

> *. . . . I am only telling you . . . do you think if we had done something*
> *wrong, we wouldn't have gotten out of here? We had six months to do it*
> *and we didn't, but anyways; you don't see that.* Anyways, my family was
> destroyed, you destroy it. I hope you understand it, I know you won't
> because you are machines, not people . . . . I just wanted to tell you that.
> One day, my attorney told me, "Weird things happened in your house." *I*
> *don't know if taking pictures is a weird thing, but that was the only thing*
> *that we would do and it wasn't with bad intentions. . . . . Yes, I know that it*
> *looks bad, but it wasn't with bad intentions, but it doesn't matter. . . . I took*
> *them and I put them in the computer, so I am the culprit, nobody else . . . . I*
> *hope you don't continue with your injustice.* And, I know that what I am
> going to do is not a punishment for you, the ones who are going to suffer are
> my parents, my brother and Angie, my girlfriend ... they are the ones who
> are going to be affected the most.

J.A. 224 (emphasis added); *see also* J.A. 332 (FBI agent acknowledging note

included second italicized block quoted above).

A veteran Henrico County social worker familiar with the family testified

on behalf of the defendants, from her experience working with them and the

minor, their now 17-year-old son.  J.A. 334-35.  The minor was put in foster care

upon the finding of the intrafamily images when the search warrant was executed.

The social worker described the department's obligation to promptly develop a

service plan for the juvenile court.  This required her to speak repeatedly with the

parents and the minor, and to assign professionals for assessments.  J.A. 335-36.

The plan ultimately proposed for family reunification was presented by the

social worker, and approved by the following: (1) her supervisor at Henrico Foster

Care Services, (2) the CASA (Court Appointed Special Advocate) worker

appointed to advocate for the minor, (3) the court appointed lawyer acting as

guardian ad litem (GAL) for the minor, and (4) a Henrico juvenile court judge.

J.A. 347-49.

The social worker described the defendant parents as "very cooperative,

really saying to me,  [']We will do anything you ask us to do to get our son back.

We will do anything."  She also described how when a child is in protective

services and foster care, "we have to give parents all the services to see if they can

rectify the situation that brought that child into foster care."  J.A. 336.  Despite

that, there are circumstances where reunification is not recommended by social

services, or when reunification is recommended, but the juvenile court rejects the

plan, or defers reunification.  J.A. 337-38.

The defendants themselves expressed their willingness to submit to

complete "parenting evaluations," but their juvenile court attorneys would not allow it.  Instead, the parents had psychological assessments done, with a bilingual psychologist specializing in multicultural cases.  J.A. 338-39, 344.[5]

The social worker had frequent contact with the defendants and the minor. She attended all counseling sessions she set up for the minor and the adults, for example, accompanied by a counselor, family friend, or foster parents who were bilingual.  She worked with them on scheduling and transportation issues.  She described the visits between parents and child as very positive:

> I mean, they did well.  They would bring snacks that he liked.  They would bring clothes that they felt like he needed from home.  They would always ask  about his wellbeing.  They would please ask me to relay to the foster parents how grateful they were that he was being well taken care of and in a Cuban home because Mom [Yida Perez] was very concerned about what he was eating.

J.A. 340-41.

It is atypical to see biological parents maintain a good attitude toward foster parents.  As the social worker explained, "most biological parents are very

---

[5] Ms. Perez scored borderline or low average on multiple cognitive functioning measures, but had no thought, psychiatric, or personality disorders, according to her assessment by a licensed clinical psychologist and clinical neuropsychologist. *See* J.A. 506-07.  The assessment found the mother's "concern for her son's well-being was apparent."  It concluded that a psychiatric consultation was not warranted, but recommended continued family therapy and supervised visitation.  "At the discretion of family therapist and supervising clinicians, the family should make eventual transition to regular visitation, with the eventual goal of reunification/transition home," the psychologist opined.  J.A. 508-09.

disrespectful to our foster parents and see them as stepping in and taking their child." J.A. 340. By contrast, the defendants were both respectful to the foster parents, and reminded their child to be respectful as well, following their rules, and the rules of his school. J.A. 340-41.

The social worker identified another stark difference between the many other cases involving a finding of sexual abuse and this case. "Many of the other cases I've worked the youth is very fearful and absolutely does not want to come home, is just very fearful of the situation that they came from." That never was the case with the defendants' son. J.A. 341-42.

Another stark distinction was the absence of issues other than the unique family photographs. "There's typically many other issues," like substance abuse, mental health issues, or homelessness—issues clearly absent in this case. J.A. 342. By contrast, these defendants were a two-parent, married couple, employed homeowners, with no criminal record, who had their child in school without a history of tardiness or delinquency. J.A. 350-51.

In addition, although this case did meet the definition of sexual abuse, it was not like the bulk of such cases in two other respects. First, there was no pattern of intercourse, actual penetration by an adult family member with the child. Second, in many cases the foster care placement originates for some unrelated reason, and the sexual abuse becomes apparent only later, through counseling, and

17

ensuing complaints by the child.  J.A. 342-43.

The social worker met with the minor and the rest of the family from April 2013 to September 2013.  She continued to work with the minor thereafter up until the April 2014 sentencing.  She was with the minor during counseling sessions twice a month, and transported him to events for school and court.  During those many occasions, the minor spoke of the circumstances of the case and his parents. He never indicated in those conversations that any family member had intercourse with him, or penetrated him in any way; he affirmatively denied such conduct ever occurred.  J.A. 343-44.  Had he ever said otherwise in a counseling session, the counselor would have been obliged by law to disclose that; no such disclosure was ever made.  J.A. 344.

Social workers and foster parents are trained to identify signs to look for in child victims of sexual abuse.  Those signs include severe behavior challenges, night terrors, not wanting to shower, hygiene issues, extreme weight gain, and excessive aggression or promiscuity.  No such observations existed in this case, and the minor told the social worker that he was still a virgin.  J.A. 345-47.

Defendants never said in their own counseling sessions and psychological assessments that there was penetration or intercourse with the minor.  J.A. 347.

Defendants called at sentencing Griselda Vidal, a woman who came to the United States from Cuba in 1967, and has been known by more or less the entire

Cuban community of Richmond since then. She knew Fidel Rodriguez since he came from Cuba to the Richmond area in 2002. In 2004, Mr. Rodriguez brought over his older son, Yosvany. His wife, Yida Perz, came in 2007. J.A. 358.

When Fidel Rodriguez first arrived here, he did not know English and relied heavily on Ms. Vidal to help in the construction work he engaged in. J.A. 359. As time went on, Ms. Vidal saw his family daily. The defendants were her neighbors, who came by her house for coffee, and with bills or letters with which they needed her assistance to understand or pay. J.A. 359-60.

In all those visits, Ms. Vidal did not ever observe the minor do anything unusual in terms of sexual conduct. Nor did she ever see affection between defendants and the minor beyond the ordinary affection of any parent for their child. J.A. 360-61.

Ms. Vidal tried to persuade both defendants to learn to use computers, but never succeeded. J.A. 363-66.

Defendants also called at sentencing Steven Donohoe, a small business owner in Richmond who was Ms. Vidal's son-in-law. J.A. 369-70. He described Yida Perez as quiet, humble, kind hearted, devoted to her family and friends, "willing to do anything for anybody, worked hard at her job, and willing to share outside of her work with others, particularly my wife, as a friend." J.A. 370-71. He described seeing her and her family 10 or 12 times a month or more for years,

19

and seeing nothing that caused him concern or puzzled him about the intrafamily relationships. J.A. 371-72. He said the minor clearly missed his family and "very much wants to be back as a family together." He added, "I'm worried about him if he's not back with his family." J.A. 372-73.

The district court sealed the courtroom for the testimony of the minor. His short but passionate remarks speak for themselves. J.A. 455-57. Those remarks were consistent with other evidence recited above about the love family members had for each other, the absence of emotional or physical abuse, and the sense of disbelief the whole family had about the conduct of the case and its draconian penalties. "I don't have any reason to lie," the 17 year old said. "And if my parents had done anything to me, I wouldn't be here today." J.A. 457.

Defendants made and preserved arguments that the 15-year mandatory minimum constituted cruel and unusual punishment in violation of the Eighth Amendment. J.A. 228-33, 274-75, 398-420. The Court denied that argument, but imposed 15 years of imprisonment on each defendant, rather than a sentence within the Guideline range of 235 to 293 months.

## SUMMARY OF ARGUMENT

The United States failed to prove that the video charged in Count Four was produced using a camera made outside the Commonwealth of Virginia, as they did for the other counts of the indictment. The conviction on Count Four should therefore be reversed for the record's failure to support a finding on the jurisdictional prong of 18 U.S.C. § 2251(a).

The conviction on Count Four should also be reversed because the record does not establish that the minor himself engaged in sexually explicit conduct, or assisted any other person to do so. For purposes of chapter 110 of Title 18 of the United States Code, of which § 2251 is a part, "sexually explicit conduct" is limited to five actions, whether "actual or simulated:" (i) sexual intercourse, (ii) bestiality, (iii) masturbation, (iv) sadistic or masochistic abuse, or (v) "lascivious exhibition of the genital or pubic area of any person." 18 U.S.C. § 2256(2)(A).

The parties properly limited their arguments to subsections (i) and (v) of section 2256(2)(A), because there was no basis to claim actual or simulated bestiality, masturbation, or sadistic or masochistic abuse in the charged video. The district court did not suggest otherwise.

Likewise, there was no evidence that actual sexual intercourse occurred involving the minor, who appears to wear a shirt and underpants at all times

21

depicted in the Count Four video.  Nor was there evidence that actual sexual intercourse occurred between the adult defendants on video.  As the FBI's Mrs. Shafer observed, the video shows Yida Perez to have her underwear in place at all times, and although Fidel Rodriguez briefly exposes his genitals at one point, that occurs before he puts his underwear back in place, and starts what Mrs. Shafer describes as lying atop his underwear-clad wife and thrusting his hips back and forth.

As for "simulated sexual intercourse," that is also absent from Count Four. The term refers not to "sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not  actually have occurred.  The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera."  73 Fed. Reg. 77432, 77441 (Dec. 18, 2008) (final rule on recordkeeping requirements for simulated sexual conduct under 18 U.S.C. §§ 2257 and 2257A) (quoting *United States v. Williams*, 553 U.S. 285, 297 (2008)).

Finally, as to Count Four, there is in any event no indication that the minor himself engaged in intercourse, actual *or* simulated, or assisted any other person (such as his mother or father) to engage in intercourse, actual *or* simulated, or in the lascivious exhibition of genitals.  The exhibition of his father's genitals outside his underwear is so brief as to not be lascivious, and is not assisted by the minor.

22

Reversal is also appropriate on all counts, because the evidence does not establish beyond a reasonable doubt the *actus reus* of each count. In relevant part, section 2251(a) only applies to a person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." There was no evidence presented, visually or through testimony, that the defendants (1) took the charged images, (2) instructed their minor son to be involved in them, or (3) even instructed others to get him involved in the situations depicted. However broadly the courts have construed the statutory terms describing the *actus reus*, they have not deemed them satisfied by a person who does not in fact create or try to create the visual depiction.

With regard to Count One, reversal is also appropriate as to Fidel Rodriguez, for a separate reason. He is not present in the image 340.jpg, the subject of that count. The government failed to prove that Fidel Rodriguez took the image, was present when that image was taken, or even knew about its existence. The government's own witnesses conceded that they had no idea who was present, apart from the subjects of the photo, when any image was recorded. Further, Yosvany Rodriguez was capable of being the subject of his own photography. The government

23

failed to exclude the reasonable hypothesis of innocence that Yosvany Rodriguez staged 340.jpg, outside the presence and knowledge of Fidel Rodriguez.

Finally, even the mandatory minimum of 15 years imprisonment imposed violates the Eighth Amendment prohibition on cruel and unusual punishment, in the unique circumstances of this case.

## STANDARDS OF REVIEW

The proper construction or legal meaning of elements of an offense is subject to *de novo* review.  *See, e.g., United States v. Day*, 700 F.3d 713, 725 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 2038 (2013).

Likewise, the Court reviews *de novo* the denial of defendants' motions for judgment of acquittal under Federal Rule of Criminal Procedure 29.  *E.g., United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006).

Whether the evidence adequately proved a relevant element of an offense is subject to review for sufficiency of the evidence.  *United States v. Zayyad*, 741 F.3d 452, 462 (4th Cir. 2014) (quoting *Day*, 700 F.3d at 725).   Although the Government may rely on circumstantial evidence and inferences, it still must prove each element of the offense beyond a reasonable doubt.  *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996) (en banc).  If the evidence gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of

innocence, the reviewing court should reverse, as under these circumstances a reasonable factfinder must necessarily entertain a reasonable doubt. *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011). The remedy for reversal of a conviction based on insufficiency of the evidence is entry of a judgment of acquittal. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 249 (1993).

Eighth Amendment sentencing challenges are reviewed *de novo* on appeal. *E.g., United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009).

## ARGUMENT

**I.    The record lacks evidence that the visual depiction charged in Count Four was produced using materials transported in or affecting interstate and foreign commerce, as alleged by the United States and required by 18 U.S.C. § 2251(a).**

The jurisdictional hook alleged here for all four relevant counts required proof that the charged visual depiction "was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer[.]" *Compare* J.A. 12-14 *with* 18 U.S.C. § 2251(a).

A Canon PowerShot model camera was in the defendants' home upon execution of the search warrant. Such cameras were manufactured outside Virginia, and were first released to the public in 2008. J.A. 56-57, 59-60.

The Government provided evidence that the images charged in Counts One,

Two, and Three were made with the same make and model camera.  J.A. 79-80,
83, 85-86.

However, the Government did *not* provide evidence that the video charged
in Count Four was made with the same make and model camera; indeed, it did not
provide evidence that the Canon PowerShot was even capable of creating the
video.  The only witness called to testify to this issue was Mrs. Shafer with the
FBI, and she did not identify the video's origin.  *See* J.A. 89-92.

There being insufficient evidence to support a charged and necessary
element of the offense, the conviction on Count Four must be reversed, and the
district court directed to enter a judgment of acquittal on that count.

## II.    A video of a clothed minor licking or fondling his mother's breasts and grabbing his father's underwear-clad bottom while the father rocks atop the underwear-clad mother does not satisfy the definition of "sexually explicit conduct" under 18 U.S.C. § 2256(2)(A).

Even apart from the jurisdictional problem, the conviction on Count Four
must be reversed, because the depicted conduct did not show the minor engaging
in, or helping another to engage in, "sexually explicit conduct," as defined by
statute.

Section 2256 of Title 18 provides definitions of terms used in the rest of
chapter 110, including 18 U.S.C. § 2251.  It generally defines "sexually explicit

26

conduct" in section 2256(2)(A)[6] to mean the following:

> actual or simulated—
> (i)   sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (ii)  bestiality;
> (iii) masturbation;
> (iv)  sadistic or masochistic abuse; or
> (v)   lascivious exhibition of the genitals or pubic area of any person.

This statutory definition cannot, of course, be read in isolation, but in context, as part of a statute construed as a whole. *E.g.*, *Santoro v. Accenture Fed Servs., LLC*, 748 F.3d 217, 221 (4th Cir. 2014). The statute defining the charged crimes requires proof beyond a reasonable doubt that the minor either (A) engaged in sexually explicit conduct, or (B) assisted any other person to engage in sexually explicit conduct. 18 U.S.C. § 2251(a).

The dispositive question, then, is whether the video shows the minor himself engaged in, or assisting any other person to engage in, "actual or simulated" sexual intercourse, or "actual or simulated" lascivious exhibition of the genitals or pubic area of any person. The answer is no, according to the record

---

[6] Section 2256(2)(A) is subject to the exception provided in subparagraph (B), which applies only "[f]or purposes of subsection 8(B) of this section." The "8(B)" reference is presumably to section 2256(8)(B), which describes one of the three qualities a "visual depiction" must have to satisfy the definition of "child pornography." Section 2251(a), however, makes no reference at all to "child pornography." It therefore appears that section 2256(2)(A) must control.

and a proper construction of the relevant terms.

> ### There was no "actual sexual intercourse" depicted in the Count Four video, by anybody.

A rational trier of fact cannot view the video or the excerpted still "thumbnails" from it, and discern actual intercourse from the bodily contact between the underwear -clad defendants, or from the evidence of the minor touching or licking his mother's breasts.

> ### There was no "simulated sexual intercourse," because a reasonable viewer would not believe that the clearly underwear-clad actors actually engaged in intercourse.

As for "simulated sexual intercourse," there appears no reason to define that term other than as defined by pornography recordkeeping requirements found elsewhere in chapter 110. Those regulations adopted the definition propounded by the Supreme Court only six years ago: simulated sexual intercourse is not "sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera." 73 Fed. Reg. 77432, 77441 (Dec. 18, 2008) (final rule on recordkeeping requirements for simulated sexual conduct under 18 U.S.C. §§ 2257 and 2257A) (quoting *United States v. Williams*, 553 U.S. 285, 297 (2008)).

That simply did not happen here.  There were no camera tricks.  The Count Four video shows is two underwear-clad adults clasped together, and the minor licking the woman's breasts but not having intercourse or pretending to, with anybody.  A reasonable viewer would not believe that sexual intercourse occurred; therefore, there was no "simulated sexual intercourse," whether engaged in or assisted by, the minor.

> **To the extent Fidel Rodriguez exhibited his genitals briefly, that was not lascivious, nor was there evidence that the minor assisted him in doing so.**

For a moment in the video of more than two minutes, the front of Fidel Rodriguez's lower torso appears on camera as he lowers his underwear to expose his penis, before covering it up again.  This brief depiction is not lascivious, as a matter of law, because it is so brief.  *See In re Search of 10 Cyr Circle*, 916 F. Supp. 2d 195, 160-61 (D.  Mass. 2013) (sequences of surreptitious filming of frolicking nude children not lascivious "despite the fact that the camera operator occasionally zooms in on the genitals briefly.").  Even if deemed lascivious, however, it was not an act done with the assistance of the minor, as required by section 2251(a).

**III.    18 U.S.C. § 2251(a) requires active use, enticement, persuasion, or coercion of a minor, and not merely the passive acceptance of that minor's voluntary engagement in such conduct, without instigating it.**

The essence of section 2251(a) is not simply *permitting* a minor to engage

in specified conduct, as barred by 2251(b) when applied to parent defendants, but actively using, persuading, coercing, or otherwise instigating it.  The record lacked evidence of such instigation, requiring reversal on Counts One through Three.

"There is undoubtedly an active component to the notion of 'use.'" *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996).

Although *Sirois* indicated in dicta that the "use" component is satisfied "if a child is photographed in order to create pornography," *id.*, it was undisputed there that the *accused* had in fact made the visual images, and proposed taking them.  This fits any ordinary understanding of "use" or the other active verbs in the first clause and element of § 2251(a).  Indeed, the first words of the *Sirois* opinion are these:  "Robert Sirois photographed sexual activity involving teenage boys who had been transported from Connecticut to New York by their grade-school teacher." *Id.* at 36.  His coconspirator was a school teacher who regularly seduced his young male students, and the pair got one student victim tipsy before having sexual intercourse with the boy.  *Id.* at 37.

There are at least three reasons to find that the unnecessarily broad dicta of *Sirois*, repeated in other cases, does not warrant the conclusion that the "use" element has been satisfied in this case.

First, just as in *Sirois*, the "active component" of use in the cases espousing that dicta involved at a minimum the *defendant* photographing or filming the

sexually explicit conduct, and typically much more. In *United States v. Fadl*, 498

F.3d 862, 866 (8th Cir. 2007), for example, the court had this to say about the

defendant's conduct:

> Fadl's conduct went well beyond simply photographing minors who were
> engaged in sexual conduct of their own accord. Fadl's plea agreement
> reflects several instances in which he persuaded, induced, or paid minors to
> engage in the sex acts that he photographed. Fadl actively participated in
> some of these recorded sexual acts as well.

Likewise, in *United States v. McCloud*, 590 F.3d 560, 564-66 (8th Cir. 2009), *cert.*

*denied*, 131 S. Ct. 72 (2010), the defendant admitted a continuing sexual

relationship with at least one minor victim, and had taken numerous pictures of

himself having intercourse with various minors. *See also, e.g., United States v.*

*Ritter*, 2012 U.S. Dist. LEXIS 74401, ** 4-5 (D. Mass. 2012) (defendant initially

pretended to be minor himself, solicited pornographic images of victim, and did so

as prelude to meeting and having intercourse with her); *United States v. Helton*,

2007 U.S. Dist. LEXIS 41602, ** 2-12, 14 (W.D. Okla. 2007) (defendant carefully

positioned "a hidden camcorder in a bathroom in a manner that was designed to,

and did, result in visual depictions of the resident females, including the minor

female, in a manner that depicted the pubic or genital area.")

Closer to home, this Court, in *United States v. Engle*, 676 F.3d 405, 419 n.9

(4th Cir.), *cert. denied*, 133 S. Ct. 179 (2012), cited *McCloud* approvingly in

affirming a section 2251(a) conviction. But the evidence there was that the

31

defendant spent significant time cultivating an attachment with minors aged 13 and 17, sent nude photos of himself to one, and ultimately crossed state lines to have intercourse with both of them. *Id.* at 411. This Court also observed that "persuade," "induce," and "entice" as used in section 2251(a) are not defined by statute, but by plain meaning are synonyms conveying the idea of one person leading or moving another by persuasion or influence to some action or state of mind. *Id.* at 411 n.3 (quoting *United States v. Broxmeyer*, 616 F.3d 120, 125 (2nd Cir. 2010)). There was no evidence of this active role by defendants in this case.

Second, to treat the "use" element of the statute as being met as long as a child is photographed engaged in or helping another to engage in sexually explicit conduct, is the functional equivalent of rewriting the statute to say that one element is effectively subsumed within another. This Court should do the opposite, giving effect if possible to every clause and word of a statute. *See, e.g., Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 398 (1984); *Clark v. Absolute Collection Serv.*, 741 F.3d 487, 491 (4th Cir. 2014).

Third, an unnecessarily broad construction of section 2251(a) makes practically irrelevant the distinctions made in the plain language of that section and that of section 2251(b). Section 2251(b) states in pertinent part that a custodial parent of a minor who "knowingly permits" the minor to do what 2251(a) otherwise proscribes, is subject to the same penalty. Once again, it

32

violates statutory construction principles to treat 2251(a) as if it covers what the

obviously broader language of section 2251(b) does.  It amounts to rewriting a

statute, usurping the role of Congress.  *See, e.g., Allergan, Inc. v. Alcon*

*Laboratories, Inc.*, 324 F.3d 1322, 1346 (Fed. Cir. 2003).

> ### The proper construction of the "use" prong of section 2251(a) requires the affirmative act of instigation, which was lacking here.

The First Circuit recognized but ultimately avoided the issue of whether the

term "use" in section 2251(a) could be satisfied by something less than

instigation---i.e., persuade, induce, or entice---in *United States v. Ortiz-Graulau*,

526 F.3d 16 (1st Cir.), *cert. denied*, 555 U.S. 1077 (2008).

In *Ortiz-Graulau*, the then 38-year-old defendant carried on a consensual

sexual relationship with a 14-year-old female, and they lived together as a couple

for some time, at a time when their relationship was legal under the law of Puerto

Rico, where they lived.  *Id.* at 17 & n.1.  Construing the defendant's arguments on

appeal to suggest that the record did not establish him to have "employed or used"

the minor, the First Circuit determined that the evidence was sufficient to prove

the "instigation" seemingly required by the statute, at least given the trilogy of

undisputed facts: (1) the large age difference between defendant and minor, (2) the

defendant's participation in some of the sexual contact, and (3) his admission to

actually "taking the photographs (or at least many of them) . . . ."  *Id.* at 18-19.

"Whether something less than instigation might suffice need not be decided." *Id.*
at 19.

Here, unlike in *Ortiz-Graulau*, there was no evidence of "instigation,"
explicit or implied.  The defendants did not seek, much less repeatedly have,
sexual contact with their minor son.  Many of the *uncharged* naked images of the
minor did not even depict one or both defendants, and the images charged in
Counts One through Three did not by their nature or related evidence support a
finding beyond reasonable doubt that the defendants instigated the minor's
conduct with his adult stepbrother, for any purpose.

Instigation is required by the plain meaning of the active terms in section
2251(a), and to distinguish those active terms from the passive one found in
section 2251(b).  The convictions on Counts One through Three should
accordingly be reversed as to both defendants, and judgments of acquittal entered.

**IV.**  **With regard to Count One, the Government failed to prove beyond a
reasonable doubt that Fidel Rodriguez had any involvement with or
was ever aware of the taking of Photo 340.jpg, the subject of that
Count.**

Count One of the indictment charged Fidel Rodriguez and Yida Perez with
Production of Child Pornography regarding a single still photo labeled 340.jpg and
admitted into evidence as Govt. Trial Exh. 3. The photo depicts Yida Perez on the
ground with Yosvany Rodriguez holding her down and her minor son kneeling at her

34

head with his limp penis hanging into her mouth. Fidel Rodriguez is not present in the photo. The government's argument was that, since Fidel Rodriguez was not present in the picture, the only reasonable conclusion was that he must have been the person who took it and, therefore, participated in the production of that ostensibly pornographic image of his minor son. The evidence the government offered to support this proposition was weak and conflicting circumstantial evidence at best, and did not negate to reasonable theory of innocence that Yosvany Rodriguez set up the camera to take 340.jpg automatically, or that someone other than Fidel Rodriguez took the photo.

The government's argument that Fidel Rodriguez had to be the photographer of 340.jpg was built around their effort to show that since the four family members lived together, and the other charged photos and video clearly involved all four family members, the only possible inference was that 340.jpg was produced with all four persons present. The primary proof offered to support this was statements made by Yida Perez to FBI Special Agent Odette Tavares on September 18, 2013. After showing Yida Perez some of the ostensibly pornographic images, Agent Tavares questioned Yida Perez about them. At trial, Agent Tavares recounted that Yida Perez said that only the Rodriguez family had seen the photos. When the agent was asked if Ms. Perez "mention(ed) anyone else being involved in these pictures other than the four Rodriguez family members," the agent responded that Ms. Perez did not.

35

J.A.115. The fact that Yida Perez did not "mention" anyone else involved with the pictures was the slender reed of evidence the government relied upon in asking the trial court to conclude beyond a reasonable doubt that 1) only the four family members were involved in questionable pictures taking, and 2) all four members were always present together when questionable pictures were taken. However, as pointed out by defense counsel at the Rule 29 motion and in closing, much of the government's own evidence undercuts that proposition.

The government's witnesses admitted they had no idea who came and went from the Rodriguez apartment besides the four family members, or who was present there at any given time, whether family or not. J.A. 55. At the time of the execution of the search warrant, Fidel Rodriguez's sister Raquel was living with the family at their new house, visiting from Cuba. FBI Special Agent Michael Shuler testified that he had no idea how long she had been there, how often she came or how long she would typically stay. J.A. 67. Also, Mrs. Shafer, who conducted a forensic examination of all photos and video, found numerous images of other people besides the four family members, interspersed among the ostensibly pornographic images she found. J.A. 101-102. She also stated that she found 51 still images and two videos involving the minor naked, and these involved various combinations of family members, and sometimes the minor alone. J.A. 92. Shafer admitted the obvious when she conceded that there was simply no way to tell if any other people were

present in the apartment when any ostensibly pornographic images were taken. J.A. 103. Nor was it possible, from forensic examination, to determine who actually took any given photo or video. J.A. 96. The government's proposition that the Rodriguez family was solitary and only did things as a group of four was not supported by the testimony offered, which left open the question of whether another person or persons aside from Fidel Rodriguez might have been present when image 340.jpg was taken.

Even more problematic for the government theory was the figure of Yosvany Rodriguez. It was generally conceded by both sides at trial that Yosvany was the primary photographer in the family, and the producer of the vast majority of the photos and video, both ostensibly pornographic and non-pornographic. Mrs. Shafer's forensic examination revealed multiple videos that Yosvany Rodriguez had made of himself, including footage of himself masturbating. J.A. 102. The trial court agreed that those videos showed that Yosvany Rodriguez was capable of filming himself. J.A. 192. The government's own evidence showed that Yosvany Rodriguez had ability to make himself the subject of his own photography. As stated above, there is no way to tell from an image who is behind the camera. As the primary family photographer and as one plainly able to set up equipment to operate automatically so he could be his own subject, it perfectly plausible that Yosvany Rodriguez staged the scene depicted in 340.jpg to include his minor step brother and step-mother. The government's evidence, far from excluding this possibility, provides the reasonable

37

hypothesis of innocence that 340.jpg could easily have been produced outside the presence and knowledge of Fidel Rodriguez.  As such, the trial court erred in finding Fidel Rodriguez guilty of Count One.

## V. It constitutes cruel and unusual punishment under the Eighth Amendment to imprison these defendants for 15 years under the unique circumstances of this case.

### *Proportionality review should apply, even to a sentence less than life.*

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend VIII.  The Supreme Court has had occasion to state that the Eight Amendment "prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime."  *Rummel v. Estelle*, 445 U.S. 263, 271 (1980); *see also Solem v.  Helm*, 463 U.S. 277, 284 (1983) (amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed.").

Proportionality review under the Eighth Amendment is not *required* for any sentence less than life without possibility of parole.  *See, e.g., United States v. Polk*, 905 F.2d 54, 55 (4th Cir. 1990); *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir. 1988).

But it is equally clear that "no penalty is *per se* constitutional" under the Eighth Amendment.  *Solem*, 463 U.S. at 290.  In addition, the question of whether a penalty is unconstitutional "cannot be considered in the abstract.  Even one day

38

in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Robinson v. California*, 370 U.S. 660, 667 (1962); *see also United States v. Rhodes*, 779 F.2d 1019, 1029 (4th Cir. 1985) (discussing particular offense conduct and not just drug trafficking in abstract).

In *Rhodes*, even as the Fourth Circuit seemingly construed proportionality review (or at least, "extensive" review) as inapplicable to a sentence of a term of years, "it nevertheless analyzed the sentence using de facto proportionality review." *United States v. Wellman*, 716 F. Supp. 2d 447, 459 (S.D. W. Va. 2010). Such a review includes consideration of the gravity of the offense conduct and the harshness of the penalty, an examination of sentences imposed on other defendants in the jurisdiction generally, and of sentences imposed for commission of the same crime in other jurisdictions. *See id.* at 460-62; *Solem*, 463 U.S. at 291-92.

One must acknowledge that "any type of sexual exploitation of a minor is a very serious offense." *Id.* at 460. But one must also acknowledge that *this* case does *not* involve a defendant receiving and possessing child pornography through the use of the internet, after a previous conviction for sexual abuse arising out of the defendant's use of physical force to coerce a six-year-old boy into intercourse, as *Wellman* did. *Id.*

Even accepting the district court's verdict that the charged images involved sexually explicit conduct for the purpose of creating images, there is no evidence

that Yida Perez or Fidel Rodriguez took the images, copied them to a computer or any other media, printed them, or even ever looked at them before interrogated by authorities. Indeed, at sentencing the undisputed evidence was that they were totally computer illiterate. Likewise, neither the charged images, nor any other statement or evidence, suggest there was sexual intercourse with the minor at any time, on film or not, of the voyeuristic and/or sadistic type which so fuels the outcry against child pornography and haunts those who must view it in prosecuting, defending, or deciding these cases. And, as shocking as the Count One image may be, it features a child in no distress, and the woman defendant being held down by the very adult Yosvany Rodriguez.

Unquestionably, significant sentences, exceeding 15 years, are meted out and affirmed in this Circuit, for a variety of conduct, including mandatory minimums for repeat firearm and drug offenders. *See, e.g., Wellman*, 716 F. Supp. 2d at 461. However, in fiscal 2012, the mean and median sentence for crimes classified as "sexual abuse" were 146 and 120 months, respectively, while "child pornography" offenses yielded mean and median numbers of 124 and 86, respectively. USSC, *Statistical Information Packet, FY 2012, Fourth Circuit*, at Table 7 (available at

http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/

State_District_Circuit/2012/4c12.pdf).

40

It is not clear how cases *factually like this* are sentenced in other jurisdictions, perhaps because it is so unique. The case law suggests that, if there is a "typical" section 2251(a) case, it involves one or more of the following: (1) prior history of sex crime convictions, (2) long-standing addiction to child pornography, (3) personal solicitation of the minor's actions and personal involvement in obtaining or creating and retaining CP images, (4) full-on sexual intercourse or other penetration of one or more minors, (5) a defendant producing the child porn to further his or her own sexual gratification, or that of others, and (6) obviously traumatized victim or victims, who some times are the first and primary complaining witnesses. *See* J.A. 300-06 (sampling and summarizing section 2251(a) cases from four circuits, including this one).

Nationally, the mean and median sentence lengths in fiscal 2012 for federal classified as "sexual abuse" were 127 months and 120 months, respectively, well below the statutory mandatory minimum here. The mean and median were 129 and 90 months, respectively, for offenses classified as "child pornography." *See* USSC, *2012 Sourcebook of Federal Sentencing Statistics* at Table 13 (available at http://www.ussc.gov/Research_and_Statistics/Annual_Reports_and_Sourcebooks/ 2012/sbtoc12.htm).[7]

---

[7] It appears that *legally*, only two jurisdictions among American states and
(continued...)

41

*Wellman* surveyed a number of decisions upholding child pornography

production sentences against Eighth Amendment challenges.  *See Wellman*, 716 F.

Supp. 2d at 462 n.20.  They included very different fact patterns than that present

here.

One of those cited, *United States v. Falgout*, 325 Fed. Appx. 775 (11th Cir.

2009) involved pictures and videos described in a related opinion as "shocking,"

part of conduct including "extreme, malicious, and sadistic conduct towards four

very young, vulnerable children," including taping a feces filled diaper to a child's

head "as he was repeatedly tortured."  *Falgout v. United States*, 2013 U.S. Dist.

LEXIS 97491, ** 2-3 (N.D. Ala. July 12, 2013).  Worlds apart from the instant

case.

*United States v. Nelson*, 304 Fed. Appx. 821 (11th Cir. 2008) upheld a 20

year sentence for his knowing receipt and distribution of over 6,500 graphic

images of child abuse.  *See Neston v. United States*, 2010 U.S. Dist. LEXIS

138907 (M.D. Fla. Dec. 29, 2010).  In *United States v. Polk*, 546 F.3d 74, 75 (1st

---

[7] (...continued)
territories require a mandatory minimum of 15 years or longer for conduct the
equivalent of section 2251(a).  *See* Kan. Stat. Ann. §§ 21-5510(a) & (b)(2), 21-
6627(a)(1)(F) & (d) (25 years to life; minimum subject to judicial review for
"substantial and compelling reason" to go below, on review of defined mitigating
circumstances); Mont. Code Ann. §§ 45-5-625(4)(a)(I), 46-18-222(6) (25 to 100
years, though  eligible for exceptions to mandatory minimum).

Cir. 2008), the court affirmed a 188-month sentence imposed for attempted

production by a defendant who had sexually explicit discussions with multiple

underage girls, in person or online, engaged in contact offenses with minors

before, and had an earlier conviction for aggravated sexual assault on a toddler.

*United States v. Black*, 239 Fed. Appx. 210 (6th Cir. 2007) involved a 30-year

sentence for a defendant who thought he was arranging to have sex with a 15-year-

old he met on-line, had succeeded in having sex with a 15-year-old through similar

prior efforts, and received, used, and distributed child pornography.  The

remarkable 140-year sentence considered in *United States v. Johnson*, 451 F.3d

1239, 1241-42 (11th Cir. 2006), was for the defendant's repeatedly and over a

course of many years taking sexually explicit photographs of boys, possessing or

transmitting at least 24 videos of children engaged in sexually explicit conduct,

and otherwise basically making sex slaves of some victims for years, including

sexual acts one young victim described as "too many to count."

    The law rightfully declares that legislative determinations should rarely be

held unconstitutional under the Eighth Amendment, whether in a section 2251(a)

case or otherwise.  *See, e.g., Polk*, 546 F.3d at 76; *Rhodes*, 779 F.2d at 1027.

    But neither defendant here is a repeat offender with prior related

convictions, or any convictions at all.  Their offenses were not like the "abstract"

child pornography production case, which so often involves fact patterns like

those described above involving deceit, violence, rape, and manipulation.

These defendants do not appear to have instilled the idea of the boys taking photographs of each other or their parents in various states of undress or engaging in mock sex play. The only affirmative statements about the facially shocking photo of their son's penis lowered into defendant Perez's mouth are that she didn't know it was going to happen, did not ask for it to happen, and was not pleased when it did. Even the putative minor victim is stunned by the effects of what the family thought of as silly role playing.

The minor in this case has always wanted to be reunited with his parents. The clinical psychologist who examined defendant Perez thought that was a laudable and achievable goal. This is not what lawmakers had in mind in imposing a 15-year mandatory minimum. *Cf. Ortiz-Graulau*, 526 F.3d at 22 (while affirming convictions, noting "it is quite a different question whether this statute is the proper way to deal with family-related delinquencies ordinarily governed by local law.") To treat it like it was, is grossly disproportionate to the conduct established, and therefore violates the Eighth Amendment ban on cruel and unusual punishments. Any convictions affirmed should therefore be remanded for resentencing.

44

## **CONCLUSION**

For the reasons argued above, all convictions should be reversed and the district court directed to enter judgments of acquittal. Alternatively, any convictions affirmed should be remanded for resentencing, consistent with the Eighth Amendment.

Respectfully submitted this 19th day of August, 2014.

MICHAEL S. NACHMANOFF
Federal Public Defender
for the Eastern District of Virginia


_____s/ Paul G. Gill_____

| | |
|---|---|
| Samuel P. Simpson, V, Esq. | Paul G. Gill |
| Samuel P. Simpson, V, PLLC | Assistant Federal Public Defender |
| Counsel for Appellant Rodriguez | Counsel for Appellant Perez |
| 4825 Radford Avenue, Suite 103 | 701 East Broad Street, Suite 3600 |
| Richmond, VA 23230 | Richmond, VA 23219 |
| (804) 288-0337 | (804) 343-0800 |
| spsquinto@gmail.com | paul_gill@fd.org |


## **REQUEST FOR ORAL ARGUMENT**

Counsel for appellants assert that the issues raised in this brief may be more fully developed through oral argument, and respectfully request the same.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This Brief of the Appellant has been prepared using WordPerfect X4 software, Times New Roman font, 14-point proportional type size.

2.     EXCLUSIVE of the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains no more than 14,000 words, specifically 10,693 words.


I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


|  | |
|---|---|
| August 19, 2014 | s/  Paul G. Gill |
| Date | Paul G. Gill |
| | Assistant Federal Public Defender |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Samuel Eugene Fishel, IV
Special Assistant United States Attorney
Counsel for the United States
Office of the Attorney General of Virginia
900 East Main Street
Richmond, VA 23219-0000
sfishel@oag.state.va.us

Samuel P. Simpson, V
Samuel P. Simpson, V, PLLC
Counsel for Appellant Rodriguez
4825 Radford Avenue, Suite 103
Richmond, VA 23230
spsquinto@gmail.com

_____ s/  Paul G. Gill _____
Paul G. Gill
Assistant Federal Public Defender